UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHARLENE SALISBURY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:20-cv-00987-TWP-MG |
| ) | |
| KROGER LIMITED PARTNERSHIP I, and ) | |
| BOTTLING GROUP, LLC, ) | |
| ) | |
| Defendants. ) | |

**ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motions for Summary Judgment filed by Defendant Kroger Limited Partnership I ("Kroger") (Filing No. 30) and Defendant Bottling Group, LLC. ("Bottling Group") (Filing No. 34). Plaintiff Charlene Salisbury ("Salisbury") initiated this action alleging that Kroger and Bottling Group were negligent after she sustained injuries from tripping and falling over a pallet guard in a Greenwood, Indiana Kroger grocery store. For the following reasons, the Court **grants** summary judgment for both Kroger and Bottling Group.

### I.   BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Salisbury as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Here, Salisbury designates no evidence or disputed facts, instead, in her briefing, she adopts the "Statement of Material Facts Not in Dispute" presented by both Kroger and Bottling Group. (*See* Filing No. 43 at 1; Filing No. 45 at 1.) Pursuant to Local Rule 56-1, the Court accepts the moving party's facts as admitted unless the non-movant "specifically controverts" those facts in its factual statement, shows them to be unsupported, or

demonstrates that reasonable inferences can be drawn in its favor.[1] Since Salisbury presents no challenge to either Kroger's or Bottling Group's facts, they are admitted, for the purpose of summary judgment, in their entirety.

The events that give rise to this action occurred at Kroger a grocery store (the "Store") located in Greenwood, Indiana. (Filing No. 35-1 at 2.) Throughout the Store, a variety of products are displayed on pallets. (Filing No. 30-2 at 80.) The location of these displays is decided by Kroger management, but who constructs the displays is determined by the product being displayed. (Filing No. 30-4 at 7-8.) If the product is a vendor's, that vendor is responsible for both building and removing the display. *Id.* Kroger instructs the vendors on where they may place their displays, and the vendors are responsible for putting the display up and, at a later specified time, taking it down. *Id.* at 8-9.

Anytime a pallet is placed on the floor, Kroger requires that pallet guards are installed around the base of the pallet. (Filing No. 30-5 at 18.) The pallet guards used at the Store are approximately a 18 inches tall and black in color. (Filing No. 35-3 at 28, 33.) Pallet guards are required both to prevent individuals from getting their feet caught in the pallet and for aesthetics. (Filing No. 30-3 at 9.) The individual who assembles the display is responsible for putting up the pallet guards. *Id.* at 25. When a display is taken down, the pallet guards should be removed. (Filing No. 30-3 at 9).

On February 8, 2019, Kroger employee Christopher Rice ("Rice"), Manager of the Store, informed Bottling Group employee Travis Nelson ("Nelson") that he needed to remove a display

---

[1] Southern District of Indiana's Local Rule 56-1 requires that a party moving for summary judgment include a section in their briefs labeled "Statement of Material Facts Not in Dispute." *See* S.D. Ind. Local R. 56-1. The non-movant opposing summary judgment must then respond with a "Statement of Material Facts in Dispute" that "identifies the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment." *Id.*.

of Pepsi soft drinks which was located in front of the packaged meat department and had pallet guards on all four sides. (Filing No. 30-4 at 12; Filing No. 30-5 at 9-10.) As requested, Nelson disassembled and pulled the pallet guards base up, jacked the display pallet onto a pallet jack and took the display away. (Filing No. 35-3 at 9-10.) He reassembled the pallet guards and then went to lunch. *Id.* at 10. Nelson was not instructed by Kroger to reassemble the pallet guards but did so because he believed Kroger was going to be putting up a new display at that location. (Filing 30-5 at 10.) Typically, when a display is removed, pallet guards are removed as well "so [they] don't become a tripping hazard." (Filing No. 30-4 at 12.) Rice, nor any other Kroger employee, supervised Nelson's removal of the display or witnessed that he had reassembled the pallet guards. (Filing No. 30-4 at 13-14.)

Salisbury arrived at the Store around 11:15 a.m. and shopped for approximately twelve minutes before making her way to the meat department. (Filing No. 30-2 at 15-16.) When she arrived at the meat department, she picked up three packages of bacon from a sales display and continued shopping. *Id.* at 39. A short time later, she decided that she did not want one of the packages of bacon, ("[a]nd then I went -- then I went down one aisle, came up the next aisle past the two skids [i.e. pallet guards]. And I was thinking, "No, you don't need three packages of bacon."") *Id at 89.* Salisbury stopped her cart and put one package of bacon into a sale display case, rather than going all the way over to where she had picked it up. *Id.* at 48, 91. She then turned and took three steps away from the display. *Id.* at 20-22, 78-79. On her third step, Salisbury tripped and fell over the pallet guards left by Nelson. *Id.*

Salisbury was thinking about what she needed for dinner and was looking up when she fell. *Id.* at 29-30. There was no obstruction preventing her from seeing the pallet guards, and she concedes that she would likely have seen the pallet guards if she had looked down. *Id.* at 30-31.

3

The lighting in the Store was adequate and had she looked down, Salisbury acknowledges she would have seen the pallet guards on the floor. *Id*. at 85-86.

Rice was in the meat section of the Store at the time of Salisbury's and was approximately 40 to 50 feet away facing the opposite direction and talking to another vendor. (Filing No. 30-4 at 15-18, 21-23.) From where he was standing, he could not see the pallet guards left on the floor. *Id.* He ran to Salisbury and asked if she needed medical attention. *Id.* at 15, 18, 24. Rice grabbed some napkins for Salisbury and notified a member of management about the incident. *Id.* A short time later, Jeremiah Cox ("Cox"), Assistant Manager of the Store, heard an announcement over the public address system that someone had fallen. (Filing No. 30-3 at 18.) Cox approached Salisbury in the packaged meat department and attempted to assist her. *Id.* at 18-19. An ambulance was contacted, and Salisbury was taken to the hospital. *Id.* at 22.

Salisbury filed this action in state court and it was later removed to federal court. (Filing No. 1.) She alleges premises liability negligence against both Kroger and Bottling Group. (Filing No. 1-2 at 1.) Unfortunately, as a result of the fall, Salisbury sustained dental injuries including two broken front teeth, a broken canine tooth, and continued dental pain; a "little scar" under her nose; a contusion above her right eye; and increased pain or re-injury relating to pain she was experiencing in January 2018. (Filing No. 30-2 at 50-52, 58-59, 75, 110.)

## II.     SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

4

fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). The moving party bears the burden of showing the absence of genuine issues of material fact. *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018). If the moving party carries its burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250.

"However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

5

### III.     DISCUSSION

Kroger filed its motion seeking summary judgment on Salisbury's premises liability negligence claim, thereafter, Bottling Group filed its Motion for Summary Judgment, in which Kroger also joined.  The Court will address each Motion in turn.

### A.     Kroger's Motion

Kroger argues that it is entitled to summary judgment for two reasons: (1) Salisbury has failed to establish that Kroger created the alleged dangerous condition that caused her to fall; and (2) she has failed to prove that Kroger had actual or constructive notice, prior to her fall, that the alleged dangerous condition existed. Alternatively, Kroger also contends it is entitled to summary judgment based on the evidence presented in Bottling Group's Motion (*see infra* Section III(B)) because the assembled pallet guards constituted a "known or obvious condition [which] did not pose an unavoidable, unreasonable risk." (Filing No. 31 at 1.)

Salisbury's Amended Complaint alleges "on or about February 8, 2019, the plaintiff, Charlene Salisbury, tripped and fell over an empty pallet left in the aisle . . . causing the plaintiff to suffer serious injuries." (Filing No. 35-1 at 2.) She alleges "[t]he fall and resultant permanent injuries of the plaintiff were caused by the negligence of the defendants who failed to utilize reasonable care in the inspection and maintenance of said premises." *Id.* at 3.

Because the Court is exercising diversity jurisdiction in this matter, its duty "is to decide issues of Indiana state law" as it predicts "the Indiana Supreme Court would decide them today." *Doermer v. Callen*, 847 F.3d 522, 527 (7th Cir. 2017). Under Indiana law, the essential elements for a negligence claim (based on premises liability) are (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, and (3) an injury proximately caused by the breach. *Sturgis v.*

*Silvers*, No. 1:15-cv-00738-JMS-MJD, 2017 WL 4922734, at *4 (S.D. Ind. Oct. 31, 2017) (quoting *Yost v. Wabash Coll.*, 3 N.E.3d 509, 515 (Ind. 2014)).

Whether a duty exists is a question of law to be decided by the court. *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 394 (Ind. 2016). Under Indiana premises-liability law, a landowner owes a business invitee "a duty to exercise reasonable care for their protection while they remain[] on the premises." *Schulz v. Kroger Co.*, 963 N.E.2d 1141, 1144 (Ind. Ct. App. 2012). The parties do not dispute that Salisbury was an invitee on Kroger's premises, therefore, Kroger owed Salisbury a duty to exercise reasonable care. The Indiana Supreme Court has adopted the Restatement (Second) of Torts § 343 (1965), which outlines this duty. Kroger would breach this duty and be subject to liability for physical harm caused to Salisbury by a condition on the land, only if it

> (a) Knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) Should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) Fails to exercise reasonable care to protect them against the danger.

*Burrell v. Meads*, 569 N.E.2d 637, 639-40 (Ind. 1991). Each of the three elements must be present. *Rogers v. Martin*, 63 N.E.3d 316, 322 (Ind. 2016).

Kroger argues there is no evidence that an employee created the hazard or observed the dangerous condition prior to the Salisbury's fall. "Before liability may be imposed on Kroger as the invitor, it must have actual or constructive knowledge of the danger." *Schulz* at 1144 (citing *Carmichael v. Kroger Co.*, 654 N.E.2d 1188, 1191 (Ind. Ct. App. 1995), *trans. denied*). In her briefing, Salisbury does not respond to Kroger's argument about whether Kroger created the alleged dangerous condition. Where a party makes no attempt to respond to an argument

7

concerning a claim at summary judgment, that party waives the claim. *See Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018). Thus, Salisbury has waived this argument and the Court will address Kroger's defense regarding lack of actual or constructive notice.

### 1. **Actual Notice**

The first element requires that the landowner have "actual or constructive knowledge of a condition on the premises that involves an unreasonable risk of harm to the invitees." *Pfenning v. Lineman*, 947 N.E.2d 392, 406 (Ind. 2011); *see also Schulz*, 963 N.E.2d at 1144 ("[B]efore liability may be imposed on the invitor, it must have actual or constructive knowledge of the danger."). Here, the question is did Kroger have actual or constructive knowledge that the pallet guards were on the floor and created an unreasonable risk of harm to its invitees?

Kroger argues the undisputed evidence fails to establish that it had actual knowledge that the pallet guards had been reassembled and left on the floor. Kroger points to multiple citations in the deposition testimony of Salisbury and Kroger's employees, that the testimony fails to provide any evidence that any Kroger employee either saw or was informed about the location of the pallet guards prior to Salisbury's fall. (Filing No. 31 at 24-27.) Both Cox and Rice testified that if they had seen pallet guards on the floor which had been assembled with no display present, they would have removed the pallet guards. (Filing No. 31, at 25).

In response, Salisbury does not identify any citations to evidence establishing that Kroger had actual notice. She argues ,without designating any evidence that "Kroger owned the pallet guards, directed a Bottling Group employee to move a skid, and then failed to retrieve the pallet guards or move a new pallet to the location." (Filing No. 45 at 5). Given Salisbury's failure to designate any evidence pointing to Kroger's actual knowledge of the pallet guards prior to

8

Salisbury's fall, the Court must assume that Salisbury does not dispute this fact. Thus, the only issue is whether Kroger had constructive knowledge of the pallet guards.

### 2. **Constructive Notice**

Indiana courts have found constructive knowledge where a condition "has existed for such a length of time and under such circumstances that it would have been discovered in time to have prevented injury if the storekeeper, his agents or employees had used ordinary care." *Schulz,* 963 N.E.2d at 1144 (quoting *Wal-Mart Stores, Inc. v. Blaylock*, 591 N.E.2d 624, 628 (Ind. Ct. App. 1992). The length of time is important and can be circumstantial evidence of constructive knowledge. *Reid v. Kohl's Dep't Stores, Inc.*, 545 F.3d 479, 482 (7th Cir. 2008) ("Absent any evidence demonstrating the length of time that the substance was on the floor, a plaintiff cannot establish constructive notice."). Constructive notice is found when '[a dangerous or defective] condition … has existed for such a length of time and under such circumstances that it would have been discovered in time to have prevented injury if the shopkeeper, his agents or employees had used ordinary care. *See Williams v. Meijer, Inc*., 2013 WL 3146981, *1-3 & n. 3 (S.D.Ind. June 18, 2013).

Kroger argues that there is no evidence supporting its constructive notice of the alleged dangerous condition. When asked to "identify all defects on the property which caused her fall and to state the length of time each defect existed and when she first became aware of the same," Salisbury, failed to answer how long the defect existed prior to her fall. (Filing No. 31 at 28.) Kroger asserts that the only individual who had any knowledge of the pallet guards was Bottling Group's employee, Travis Nelson, who assembled and left the pallet guards. *Id.* Nelson was not present in the Store at the time of Salisbury's fall and he testified that he does not know how long the pallet guards were up before the incident. Kroger contends there is no designated evidence

regarding how long the pallet guards were up and, therefore, no constructive notice existed. *See Waldon v. Wal-Mart Stores, Inc., Store No. 1655*, 943 F.3d 818, 822 (7th Cir. 2019); *see also Jewell v. Kroger Co.*, No. 1:11-cv-1145-JMS-TAB, 2012 WL 2414756, at *8 (S.D. Ind. June 26, 2012); *Gupta v. Caesars Riverboat Casino, LLC*, No. 4:08-cv-40-WGH-DFH, 2009 WL 3681700, at *5 (S.D. Ind. Oct. 13, 2009); *Rising-Moore v. Red Roof Inns, Inc.*, 368 F. Supp. 2d 867, 874 (S.D. Ind. 2005), *aff'd*, 435 F.3d 813 (7th Cir. 2006).

In response, Salisbury relies solely on references to Kroger's and Bottling Group's summary judgment briefs as evidence that Kroger knew, or by the exercise of reasonable care, would discover the pallet guards and their unreasonable risk.[2] The first reference was that Kroger employee, Chris Rice, was in the meat section at the time of Salisbury's fall. (Filing No. 45 at 4.) But the designated evidence is that Rice was approximately 40 to 50 feet away from Salisbury with his back turned away from her. (Filing No. 30-4 at 21-23.) Rice was also speaking to another vendor at the time of Salisbury's fall and did not see her, or the pallet guards, until after she fell. *Id.* This evidence does not support constructive notice.

Next, Salisbury points to two citations in Kroger's and Bottling Group's briefs as support for finding constructive notice: (1) the pallet guards being Kroger's property and Kroger requiring them to be installed on all pallet displays; and (2) Bottling Group's employee admitting that he left the assembled pallet guards. (Filing No. 45 at 4.) Salisbury argues that this designated evidence proves Kroger had actual or constructive knowledge of the pallet guards, or at the very least, creates a question of fact. *Id.* at 5. Neither of these references, however, indicate either that a

---

[2] In her response briefs to both Kroger's and Bottling Group's Motions, Salisbury also argues that her comparative fault, if any, is not dispositive of her claim. (Filing No. 43 at 5; Filing No. 45 at 7.) Kroger's and Bottling Group's Motions, however, include no arguments regarding Salisbury's comparative fault. Therefore, Salisbury's arguments regarding comparative fault will not be addressed.

specific Kroger employee saw or was informed about the pallet guards, much less how long the pallet guards were on the floor.

Salisbury contends that Kroger's reliance on *Gupta*, 2009 WL 2681700, at *1, is misplaced. ([Filing No. 45 at 5](Filing No. 45 at 5).)  She argues that unlike here, where it is known that the pallet guards were owned and maintained by Kroger, the plaintiff in *Gupta* could not identify what caused him to slip and fall. *Id.* Of the other cases cited and discussed by Kroger, Salisbury generally asserts that those cases are different because they each involved a random spill or debris that was dropped.  *Id.*

Considering the evidence in the light most favorable to Salisbury, there is no designated evidence as to how long the pallet guard laid on the floor prior to Salisbury's fall or that any Kroger employee was aware that the pallet guards were left on the floor. The existence of a hazard "does not automatically impute instantaneous knowledge" on a storeowner. *Austin v. Walgreen Co.*, 885 F.3d 1085, 1089 (7th Cir. 2018).  Likewise, the law does "not hold [a storeowner] strictly liable for a fall occurring before [it] even had a chance to remove the [the hazard] from the floor." *Id.* (citing *Barsz v. Max Shapiro, Inc.*, 600 N.E.2d 151, 153-54 (Ind. Ct. App. 1992).  Salisbury has designated no evidence about how long the pallet guards were on the floor.  Without evidence that Kroger had an opportunity to respond to the hazard, Salisbury cannot establish constructive knowledge.

With no designated evidence that Kroger had actual or constructive notice of the pallet guards, the Court determines that the admissible, designated evidence does not support Salisbury's premises liability negligence claim, and, thus, summary judgment is appropriate in Kroger's favor.

**B.     Bottling Group's Motion**

Bottling Group contends that it is entitled to summary judgment; because the pallet guards were a known or obvious danger that did not pose an unreasonable risk to Salisbury or any other

customer. (Filing No. 36 at 7.) "Conditions posing only a reasonable risk of harm do not trigger a landowner's duty to protect and cannot support a finding of premises liability against a landowner." *Pickens v. Wal-Mart Stores E., LP*, No. 3:14-cv-318-CAN, 2015 WL 4997064, at *6 (N.D. Ind. Aug. 20, 2015). In cases of unreasonable risk, however, a landowner may still avoid liability for physical harm to an invitee caused "by any activity or condition on the land whose danger is known or obvious to [the invitee], unless the possessor should anticipate the harm despite such knowledge or obviousness." *Douglass v. Irvin*, 549 N.E.2d 368, 370 (Ind. 1990).

Bottling Group does not dispute that it owed Salisbury a duty of reasonable care. (Filing No. 36 at 7.) However, it argues that Salisbury's claim fails because it did not breach that duty as the pallet guards were "a known or obvious danger and no one, including Charlene Salisbury, could be expected to fail to observe and avoid it." *Id*. Bottling Group cites to *Pickens* and *Darnell v. Wal-Mart Stores, Inc.*, No. 1:16-cv-02754-MPB-JMS, 2018 WL 573094, at *1 (S.D. Ind. Jan. 26, 2018), to support its assertion that the pallet guards constituted a known or obvious danger.

In *Pickens*, the plaintiff sustained injuries after his foot got stuck in a display skid stacked with boxes of above-ground pools, 2015 WL 4997064, at *5. The plaintiff observed the display and, as he attempted to walk away, his left foot hit the corner of the pool skid causing him to trip and fall. *Id*. In finding that defendants were entitled to summary judgment, the court concluded that the following undisputed facts supported finding that the display skid was a known and obvious danger: (1) plaintiff observed the display skid as he entered the store; (2) plaintiff looked at the price of the items on the skid; (3) nothing interfered with plaintiff's view of the corner of the skid; (4) the skid was dark and the floor was light (as shown in a photograph); and (5) plaintiff admitted during his deposition that had he looked down he would have seen the corner of the skid and avoided tripping over it. *Id.* at *8.

Similarly, in *Darnell*, the plaintiff was injured when she tripped and fell over a skid stacked with bags of dog food. 2018 WL 573094, at *1. The plaintiff was looking at a flower display when she stepped back, caught her foot on a skid, and fell over. *Id.* In granting summary judgment in favor of defendant, the court found that the skid was a known and obvious danger as plaintiff had admitted she had seen the skid prior to her fall and admitted "nothing out of the ordinary about the conditions of the skid or the area in which the skid was located [ ] contributed to her fall." *Id.* at *3. Additionally, the court, through a photograph of the skid's location, also noted the stark contrast between the color of the skid, the bags of dog food, and the white floor tiles. The court held that, considering plaintiff's admissions and the picture, there could be "no serious argument that the skid was not a known and obvious danger." *Id.*

In response, Salisbury argues that Bottling Group should expect that customers would not discover or realize the danger of the pallet guards. ([Filing No. 43 at 4](#).) She supports this argument with a single citation to Kroger's brief, which states that the pallet guards were located next to a fully stocked pallet. *Id.* Salisbury then asserts several factual allegations--without citation to the record--that the evidence establishes the pallet guards were being improperly used, the pallets were in the path from the meat section to another aisle, she was distracted looking for other products, and that two Kroger employees admitted that the pallet guards were a dangerous trip and fall hazard. *Id.* at 4-5. Salisbury adds that "[i]t would reasonably be anticipated that customers' ability to identify the condition would be frustrated because their attention would be directed toward other groceries and products to buy at the store." *Id.* at 5. She argues that the Restatement recognizes scenarios where the landowner "has reason to expect that the invitee's attention may be distracted." *Id.* Salisbury concludes that in a busy store, Bottling Group should expect customers would be distracted and not discover the hazard. *Id.*

13

Salisbury contends that Bottling Group erroneously relies on *Pickens* and *Darnell*. *Id.* at 7-8. She asserts that *Pickens* is distinguishable from the facts here in that it involved a pallet guard being used properly and because the Pickens saw the pallet and pallet guards prior to his fall. *Id.* at 7. Salisbury argues that unlike the lack of designated evidence in *Pickens* and *Darnell*, she has "given the Court designated evidence from two Kroger employees that the pallet guards constituted a trip and fall hazard and that it was 'common sense' not to leave a pallet guard up without a pallet inside of it." *Id.* at 7-8.

In reply, Bottling Group first points out that Salisbury failed to designate any evidence as required once the moving party has satisfied its burden to marshal evidence showing a lack of genuine factual dispute. (Filing No. 47 at 4.) Because of this deficiency, Bottling Group argues that Salisbury failed to create a genuine issue of material fact, entitling Bottling Group to summary judgment in its favor. Concerning *Pickens* and *Darnell*, Bottling Group argues they are applicable to this case. In both cases, the key facts that played a role in the courts finding that the skids were known or obvious were the size of the skids, the contrast in color between the skids and floor, each plaintiff admitting they would have seen the skid if they had looked down, and that the view of the skids was unobstructed. (Filing No. 47 at 5.) Salisbury testified that she had she looked down, she would have been able to see the pallet guards from her position. *Id.* at 6. Contrary to Salisbury's response, the key to a hazard being "known or obvious" does not require that Salisbury know of or see the condition, only that the condition would be "obvious" as measured from the perspective of a reasonable person. *See Converse v. Elkhart Gen. Hosp., Inc.*, 120 N.E.3d 621, 627 (Ind. Ct. App. 2019).

Finally, Bottling Group argues that Salisbury has failed to support her argument that Bottling Group should have known that customers, like Salisbury, would be distracted and would

14

not notice the pallet guards. The Court, however, can dispose of Salisbury's distraction argument as she has failed to put forth any developed argument supported by any relevant case law. It is well-established under Seventh Circuit law that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)." *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991).

The Court agrees with Bottling Group. Salisbury has not supported her arguments with citations to designated evidence or analysis of case law. The party opposing summary judgment has an affirmative duty to demonstrate, through specific factual allegations, that there is a genuine issue of material fact. *Hemsworth*, 476 F.3d at 490. Salisbury's only citations to factual allegations are two references to Kroger's brief. ([Filing No. 43 at 4](Filing No. 43 at 4).) Despite Salisbury's adoption of the entire "Statement of Material Facts Not in Dispute" presented by Kroger and Bottling Group, Salisbury was not relieved of her duty to support her arguments with factual allegations supported by the designated evidence. Salisbury has not met her burden.

Whether a risk is obvious is a question courts can sometimes resolve on summary judgment. *Roumbos* v. *Vazanellis*, 95 N.E.3d 63, 67 (Ind. 2018). A condition is "obvious" if its presence and its risk "are apparent to, and would be recognized by, a reasonable person in the position of the visitor exercising ordinary perception, intelligence, and judgment." *Akinsulire v. Wal-Mart Stores East, LP*, No., 1:19-cv-01343-DML-TWP, 2020 WL 10354927, at *3 (S.D. Ind. Sept. 2, 2020) (quoting *Roumbos*, 95 N.E.3d at 67). "A landowner's appreciation of risk is also viewed through an objective, reasonableness lens: what risks should a reasonable landowner expect will not be obvious to an invitee?" *Id.*

Here, the designated evidence supports the objectively reasonable expectation that persons, like Salisbury, would both see and realize the risks associated with the pallet guards. The Store

was filled with various product displays that had to be navigated around by customers. (Filing No. 30-2 at 80.) The designated evidence—a photograph of the pallet guards—show that even without a display, the pallet guards were approximately a foot and a half tall and black in color, as compared to the light gray and white flooring. (Filing No. 35-3 at 28, 33.) Salisbury, in her response to Kroger's Motion, conceded that the assembled pallet guards were "quite large." (Filing No. 45 at 5.) Salisbury also testified that there was no obstruction preventing her from seeing the pallet guards and the Store's lighting was adequate. (Filing No. 30-2 at 30-31, 85-86.) She admitted that had she looked as she was walking, she would have noticed the pallet guards. *Id.* at 30-31. Given these facts, the pallet guards would have been apparent to and recognized by a reasonable person. Other than Salisbury's unsupported distraction argument, she has failed to designate any evidence demonstrating that the hazard was not obvious.

Because Salisbury has not designated any evidence raising a reasonable inference that the pallet guards were not a known or obvious hazard, the Court finds she cannot establish that Bottling Group breached its duty. Accordingly, Salisbury's premises liability negligence claim against Bottling Group fails as a matter of law, and Bottling Group is entitled to summary judgment.[3]

## IV.    CONCLUSION

For the reasons discussed above, Defendants Kroger Limited Partnership I's Motion for Summary Judgment, (Filing No. 30), is **GRANTED** and Bottling Group, LLC's Motion for Summary Judgment, (Filing No. 34), is **GRANTED**. Plaintiff Charlene Salisbury's claim is **DISMISSED** on summary judgment, the trial and final pretrial conference are hereby **VACATED**, and final judgment will issue under separate order.

**SO ORDERED.**

---

[3] Kroger alternatively joined in this argument, as such, summary judgment is warranted on the claims against them on this basis also. (Filing No. 31 at 1.)

Date: 10/20/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Ryan Daniel Etter
KEN NUNN LAW OFFICE
ryane@kennunn.com

Daniel Gore
KEN NUNN LAW OFFICE
dgore@kennunn.com

Troy Kevin Rivera
NUNN LAW OFFICE
troyr@kennunn.com

Donald B. Kite, Sr.
don.kite@gmail.com

James G. Magrames
KOPKA PINKUS DOLIN PC (Crown Point)
jgmagrames@kopkalaw.com

17